**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | | |
|---|---|---|
| In re:<br><br>CYPHERMINT, INC.<br><br>Debtor. | ) ) ) ) ) ) ) | Chapter 7<br>Case No. 08-42682-MSH |
| JOSEPH BALDIGA, CHAPTER 7 TRUSTEE,<br><br>Plaintiff<br><br>v.<br><br>JOINT STOCK COMPANY, a/k/a SAINT PETERSBURG INVESTMENTS COMPANY<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adv. Pro. No. 09-4114 |
| JOSEPH BALDIGA, CHAPTER 7 TRUSTEE,<br><br>Plaintiff<br><br>v.<br><br>TAVRICHESKY COMMERCIAL BANK OF SAINT-PETERSBURG,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adv. Pro. No. 09-4113 |

**MEMORANDUM OF DECISION ON THE MOTIONS OF DEFENDANTS JOINT STOCK COMPANY a/k/a SAINT PETERSBURG INVESTMENTS COMPANY AND TAVRICHESKY COMMERCIAL BANK OF SAINT-PETERSBURG TO DISMISS ADVERSARY PROCEEDINGS**

1

Before me are the motions of the defendants, Joint Stock Company a/k/a Saint Petersburg Investments Company ("SPIC") and Tavrichesky Commercial Bank of Saint-Petersburg ("Tavrichesky") to dismiss the respective adversary proceeding pending against each of them and the Chapter 7 trustee's oppositions thereto.[1] The defendants, both Russian corporations located in Saint Petersburg, assert three bases for dismissal: improper and thus insufficient service of process, lack of personal jurisdiction over the defendants, and *forum non conveniens*. For the reasons set forth herein, I will deny the motions to dismiss.

**Background**

On August 21, 2008, three creditors filed an involuntary Chapter 7 petition against the debtor, a New York corporation that formally conducted business in Marlborough, Massachusetts, and requested the immediate appointment of a Chapter 7 trustee. The Court approved the request and the United States trustee appointed Joseph Baldiga as the Chapter 7 trustee. The debtor did not oppose the involuntary petition and on September 24, 2008 an order for relief entered.

Shortly after his appointment, the Chapter 7 trustee sought permission to sell substantially all of the debtor's assets. Before the sale was approved, counsel, located in Worcester, Massachusetts, entered an appearance in the Chapter 7 case for an entity identified as "OJSC 'Saint Petersburg Investment Company'" which appears to be the defendant SPIC. SPIC, which identified itself as a creditor, joined with two other entities in filing an emergency motion to dismiss the bankruptcy case. That motion was denied and the Chapter 7 trustee was authorized to

---

[1] Because the motions are virtually identical, I have issued a joint memorandum applicable to both proceedings.

2

sell the debtor's assets.   Neither SPIC nor Tavrichesky has filed a proof of claim in the main case.

The Chapter 7 trustee commenced these adversary proceedings seeking to avoid preferential transfers, namely SPIC's and Tavrichesky's prepetition filing on June 13, 2008 of financing statements with the Secretary of State of New York asserting security interests in certain of the debtor's property.   The Chapter 7 trustee also seeks to avoid and recover a series of transfers from the debtor to SPIC totaling $1,665,192.31 and from the debtor to Tavrichesky totaling $5,446,141.24 as preferential or as fraudulent transfers under the Bankruptcy Code or Massachusetts law.   In addition, he is seeking the disallowance of any claims by SPIC and Tavrichesky against the estate.

## Service of Process

The defendants argue they were not properly served with process in accordance with the Hague Convention On the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, 1969 WL 97765, ("Hague Service Convention")[2] which, according to the defendants, is the only method for effectuating service of process on them in these adversary proceedings.   The defendants are incorrect.

The Hague Service Convention, a multi-national treaty governing the service of process on persons in countries which have signed the Convention, was developed at the Tenth Session of the Hague Conference of Private International Law in 1964.   The Hague Service Convention revised parts of the earlier Hague Conventions on Civil Procedure of 1905 and 1954 and, as stated in its preamble, was intended to simplify service of process and proof of such service in foreign jurisdictions while ensuring that defendants sued in foreign jurisdictions would receive actual and

---

[2] The Hague Service Convention is also available on the Hague's web site at
http://www.hcch.net/index-en.php?act=conventions.text&cid=17 (last visited February 10, 2011).

timely notice of suit. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S.Ct. 2104, 2107 (1988).

The Hague Service Convention requires each signatory country "to establish a central authority to receive requests for service of documents from other countries." *Id.* See also Hague Service Convention at Art. 2. Upon receipt of such requests, the Central Authority then reviews the documents to ensure compliance with the Hague Service Convention. Assuming the documents are compliant,[3] the Central Authority either serves the documents or arranges for them to be served in a manner consistent with the receiving country's law governing service of process. *Golub v. Isuzu Motors*, 924 F. Supp. 324, 326 (D. Mass. 1996). See also Hague Service Convention at Art. 5.

Both the United States and the Russian Federation are signatories to the Convention. See Status Table for Hague Service Convention available at http://hcch.e-vision.nl/index_en.php?act=conventions.status&cid=17 (last visited February 10, 2011). The Russian Federation, however, issued a formal objection to Article 10 of the Convention and as of July 2003 the Central Authority of the Russian Federation began returning unexecuted, civil and commercial litigants' requests for service of process. *RSM Production Corp. v. Fridman*, 2007 WL 1515068 at *1 (S.D.N.Y. 2007), *reconsideration denied* 2007 WL 2295907 (S.D.N.Y. 2007). See also U. S. Department of State, *Russia Judicial Assistance*, available at http://www.travel.state.gov/law/judicial/judicial_3831.html (last visited February 10,

---

[3] The Defendants do not argue that the documents are not compliant nor has the Central Authority for the Russian Federation informed the Chapter 7 trustee or his representatives that the documents are deficient as Article 4 of the Hague Service Convention mandates.

2011).[4]  Indeed, as the Chapter 7 trustee notes, he attempted service on the defendants via the Russian Federation's Central Authority but the summonses were returned unexecuted, a result consistent with that experienced by other courts and noted by the United States Department of State.[5]  *Nuance Communications, Inc. v. Abbyy Software House*, 2010 WL 4539396 at *11 (Fed. Cir. 2010); *Arista Records LLC v. Media Services LLC,* 2008 WL 563470 (S.D.N.Y. 2008).

Being cognizant of the Russian Federation's position, the Chapter 7 trustee also sought authorization from this Court to serve each defendant by alternate means as permitted by Fed. R. Civ. P. 4(h) and (f)(3), made applicable by Fed. R. Bankr. P. 7004.[6]  To do so the Chapter 7

---

[4] As the State Department's web site indicates, the Russian Federation's refusal to serve process emanating from the United States ostensibly arises from a dispute regarding the charging of certain fees in connection with the service under the Hague Service Convention.  In its reservation with respect to certain aspects of the Hague Service Convention, the Russian Federation has stated:

> The Russian Federation assumes that in accordance with Article 12 of the Convention the service of judicial documents coming from a Contracting State shall not give rise to any payment or reimbursement of taxes or costs for the services rendering by the State addressed.  Collection of such costs (with the exception of those provided for by subparagraphs a) and b) of the second paragraph of Article 12) by any Contracting State shall be viewed by the Russian Federation as refusal to uphold the Convention in relation to the Russian Federation, and, consequently the Russian Federation shall not apply the Convention in relation to the Contracting State.

[5] As the court in *Arista Records* noted:

> In fact, the U.S. State Department has informed the Russian Federation on numerous occasions that ... U.S. courts and litigants will explore other methods to effect service of process and advise[d] litigants that they may wish to seek guidance from legal counsel in the Russian Federation regarding alternative methods of service.

*Arista Records*, 2008 WL 563470 at *2 n. 2 (internal quotations and citation omitted).

[6] Fed. R. Civ. P. 4(f)(3) permits alternate means of service "by means not prohibited by international agreement" provided the alternate method comports with constitutional notions of due process.  *RSM Production Corp.*, 2007 WL 1515068at *1.  As the *Arista Records* court

5

trustee sought authority to retain Process Forwarding International ("PFI"), which the Chapter 7 trustee represented is the official process service contractor to the United States Department of Justice, and to retain an attorney in Saint Petersburg.[7]  The Chapter 7 trustee's motion, filed and served in each of the adversary proceedings, was allowed without opposition.   Thereafter the Chapter 7 trustee's Russian counsel served each defendant by registered mail with a copy of its summons, complaint and an apostille and statement of effect of the apostille.   According to the affidavit of the Russian counsel, copies of all the documents were sent with a notarized Russian translation.   The affidavit indicates that Russian counsel received post office receipts and delivery confirmation of the documents sent to each defendant.   Counsel also testifies in his affidavit that the registered letter sent to SPIC was subsequently returned by the post office to the Russian counsel's law firm along with a note "indicating that the storage of documents at the post office had expired."

Although Russian counsel attests that this service is sufficient under the Russian

---

stated:

> The Advisory Committee Notes include several examples of situations in which a district court would be justified in authorizing an alternate method of service. Two of these-the "refusal of the Central Authority to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States"-are highly instructive because they indicate that Rule 4(f) was not intended to burden plaintiffs with the sisyphean task of attempting service through the Hague Convention procedures when a member state has categorically refused to serve a particular type of complaint.

*Arista Records,* 2008 WL 563470 at *1.

[7] The Chapter 7 trustee also contacted James Ehrhard, the Defendants' attorney in Worcester, but was informed that counsel was not authorized to accept service nor was there anyone or any entity in the United States with such authorization.   *See* Exhibit A to Chapter 7 trustee's opposition.

Federation's procedure,[8] he took the additional step of also serving the documents in hand on Sergey Alexandrovich Somov, identified as "chairman of the board of St. Petersburg Commercial Bank Tavricheskiy [sic]." The affidavit of service indicates Mr. Somov refused to sign an acknowledgement of receipt of the documents but the affiant states he observed Mr. Somov hand the documents to his secretary with instructions to leave them for the bank's attorneys.[9] The affidavit indicates that Russian counsel also attempted in person service on "the general director of Joint Stock Company St. Petersburg Investments" but was unsuccessful because access to the building where it is located is restricted.

It is obvious but worth noting that both defendants are aware of the pending adversary proceedings as they have retained local counsel to appear in the adversary proceedings to represent their interests. The defendants' argument that they were not properly served is based purely on a technicality arising from the Russian Federation Central Authority's refusal to serve summonses issued by courts in the United States. This refusal, however, cannot be used by the defendants as a shield to deflect otherwise legitimate service of process. Furthermore I will not countenance the defendants' efforts to evade service by refusing to sign an acknowledgement of receipt of hand-delivered documents or to open properly addressed registered mail, especially where they

---

[8] Mr. Kabakov's affidavit attests that service of process on the defendants was in accordance with Article 113 of the Russian Code of Civil Procedure and that "[t]he procedure and methods used to serve the documents …comply with laws of Russia on service of judicial summons with the Russian Federation for civil cases considered by courts of general jurisdiction." *See* Affidavit of Anton Yurievich Kabakov, attached as Exhibit G to the Chapter 7 trustee's opposition, at ¶ 5.

[9] Tavrichesky submitted the affidavit of its deputy chairman of the board, Dmitry Garkusha. Mr. Garkusha states that service of the summons and complaint was accepted by a secretary who was not authorized to accept service. I need not determine whether Mr. Somov or a secretary was served because as the Chapter 7 trustee's Russian counsel notes in his affidavit, service by registered mail was sufficient.

have actual knowledge of the proceedings, have engaged local counsel,[10] and will have ample opportunity to defend themselves.

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15, 70 S.Ct. 652, 657 (U.S. 1950) (internal citations omitted).

Because service of process on the defendants pursuant to the Hague Service Convention has been rendered impossible due to the unilateral action of the Russian Federation Central Authority, the Chapter 7 trustee's service on the defendants in accordance with the laws of the Russian Federation as authorized by this Court was sufficient and proper.

### Personal Jurisdiction

A bankruptcy court's personal jurisdiction over a party arises from Fed. R. Bank. P. 7004(f).[11] The rule establishes bankruptcy court personal jurisdiction over a defendant if three requirements are satisfied: (1) service of process has been made in accordance with Rule 7004 or

---

[10] Attorney Paul R. Chomko represents the defendants in each adversary proceeding.

[11] Fed. R. Bankr. P. states:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

8

Fed. R. Civ. P. 4; (2) the court has subject matter jurisdiction under 28 U.S.C. § 1334; and (3) the exercise of jurisdiction is consistent with the Constitution and laws of the United States.   10 Alan N. Resnick and Henry J. Sommer, *Collier on Bankruptcy* ¶ 7004.07 (15th Ed. Rev'd 12/2007). The defendants contend that this Court lacks personal jurisdiction over them because the third prong of the test is not met as they lack sufficient contacts with the United States.   Again the defendants are mistaken in their assertion.

The defendants premise their argument of lack of personal jurisdiction on the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3(a) which confers personal jurisdiction "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's ... transacting any business in" Massachusetts.   The Massachusetts long-arm statute is not applicable to these proceedings, however.   The question of whether the exercise of personal jurisdiction in these adversary proceedings is consistent with the Constitution and laws of the United States must find its answer in federal law, specifically the Fifth Amendment of the U.S. Constitution.   *In re IFS Financial Corp.*, 2008 WL 2778845 at *2 (Bankr. S.D. Tex. 2008) and cases cited therein.   "When the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States." *Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles,* 87 F.3d 413, 417 (10th Cir.1996).   *See also United States v. De Ortiz,* 910 F.2d 376, 382 (7th Cir.1990).   As the Court of Appeals for the First Circuit further explained:

> Because the instant case is premised on a federal question, it is distinguishable from cases that address personal jurisdiction in the context of diversity jurisdiction, 28 U.S.C. § 1332 (1988) - a context in which the focal point is, of necessity, the Fourteenth Amendment. The distinction is of potential consequence.   When a district court's subject matter jurisdiction

is founded upon a federal question, the constitutional limits of the court's personal jurisdiction are fixed, in the first instance, not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment....   Inasmuch as the federalism concerns which hover over the jurisdictional equation in a diversity case are absent in a federal question case, a federal court's power to assert personal jurisdiction is geographically expanded. In such circumstances, the Constitution requires only that the defendant have the requisite "minimum contacts" with the United States, rather than with the particular forum state (as would be required in a diversity case).

*United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992) (internal citations omitted).

Despite the defendants' protestations that they lack sufficient contacts, the Chapter 7 trustee, who must make a *prima facie* showing of jurisdictional facts to avoid dismissal of these proceedings,[12] has presented evidence to the contrary.   Joseph Barboza, who was the debtor's president from January 2003 through April 2008 testified by affidavit that the debtor only maintained bank accounts in the United States, specifically at Sovereign Bank, and that "from 2003 through 2007 the Defendants made multiple loans to the Debtor through various contracts and loan agreements with the Debtor."   According to Mr. Barboza the "Defendants and their affiliates funded almost all start-up [sic] and operations of the Debtor."   He identifies Ivan V. Kuznetsov as an individual who owns 40% of Tavrichesky and controlled both of the defendants at all relevant times.   Mr. Barboza states that entities controlled by Mr. Kuznetsov controlled 47% of

---

[12] There are generally three standards which can be utilized when determining whether to grant a motion to dismiss for lack of personal jurisdiction: the preponderance of the evidence standard, the likelihood standard whereby a court engages in some fact finding to determine if there is a likelihood that personal jurisdiction exists, and the *prima facie* standard.   *FosterMiller, Inc. v. Babcock & Wilcox* Canada, 46 F.3d 138, 146-47 (1st cir. 1995).   In instances where there has been no evidentiary hearing, I will employ the *prima facie* standard whereby "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."   *Phillips v. Prairie Eye Center*, 530 F.3d 22, 26 (1st Cir. (2008).

10

the debtor and that Mr. Kuznetsov was also the debtor's clerk and one of its directors. Mr. Barboza certifies that he and Mr. Kuznetsov had regular contact by telephone or email regarding operations and funding of the debtor and that Mr. Kuznetsov visited the debtor's headquarters "occasionally," including one visit that lasted approximately three days, from on or about April 22 to April 24, 2008, during which period the debtor made the three wire transfers totaling $1,665,192.31 to SPIC which the Chapter 7 trustee seeks to recover. Mr. Barboza asserts that "[t]hrough Kuznetsov, both Defendants exerted influence and control over funds that they had loaned to the Debtor as well as the business operations of the Debtor."

Mr. Barboza also identified Sergey Bodrunov as an individual who, like Mr. Kuznetsov, owns 40% of Tavrichesky and controls entities which controlled 47% of the debtor. In addition, according to Mr. Barboza, Mr. Bodrunov holds or held a majority interest in SPIC and visited the debtor's headquarters at least once. Mr. Barboza also states in his affidavit that other representatives of the defendants visited the debtor's "property" on one or more occasions. The activities attested to by Mr. Barboza establish the existence of substantial contact between the defendants and the United States. *In re Pintlar*, 133 F.3d 1141, 1146-47 (9th Cir. 1998).

In addition to the visits and the alleged oversight of the debtor's funding and operations, both defendants filed financing statements in New York in an effort to perfect their alleged security interests in the debtor's assets. The defendants purposefully availed themselves of the benefits and protections of conducting business in the United States and thus the exercise of jurisdiction over their persons will not offend traditional notions of fair play and substantial justice embodied in the Fifth Amendment. *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90

L.Ed.95 (1945).

### *Forum Non Conveniens*

To obtain dismissal of these proceedings because Massachusetts is an inconvenient forum the defendants must establish that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *Tazoe v. Airbus S.A.S.,* 2011 WL 294044 at* 3 (11th Cir. 2011). Although the defendants suggest that Russia can provide a forum to decide these adversary proceedings, they fail to articulate how the preference counts, which exist solely because of the debtor's bankruptcy, can be litigated in the Russian Federation. Thus the defendants have failed to satisfy even the first prong of the test for dismissal on the basis of *forum non conveniens* and I need go no further in the analysis.[13]

### Conclusion

For the reasons set forth herein, SPIC's and Tavrichesky's motions to dismiss are denied. Separate orders will enter.

Dated: February 22, 2011                                        By the Court,

                                                                                    Melvin S. Hoffman
                                                                                    U.S. Bankruptcy Judge

---

[13] I also note that many of the witnesses are here and that it would place a financial burden on the estate to litigate these proceedings abroad.